Case No. 25-501 Good morning. Good morning. May it please the Court, Robert Willey, on behalf of the Commissioner. The Section 6038B penalty is a crucial part of the framework for ensuring that taxpayers report their foreign interests. It is accessible for two reasons. First, Section 6201A's grant of assessment authority covers the penalty. Second, even if the Court determines that Section 6201A does not cover the penalty, it should adopt the narrower reasoning of the D.C. Circuit that Congress may render a penalty accessible by implication, and it did so in Section 6308B. With respect to the 6201 argument, has any court agreed with the Commission on that argument? I'm not aware of any court that's agreed with it. I would agree that that's quite an aggressive, broad argument. It is a broad argument. There is a district court case, the recent district court case called Hong that we cited in our briefs, where the Court did say it doesn't make sense that the Congress would put a penalty in the Internal Revenue Code without it being accessible. So there was some discussion in that case that I think is consistent with this, but as to the specifics in this case, that broad argument was addressed in Farhi and in Mookie, and obviously the Farhi D.C. Circuit panel did not address that argument. So I think the main focus will be 6038. Right. The main focus would be, you know, does the 6038B penalty basically turn on the assessment authority by implication? Can I ask a question on that very point? At the time of the enactment of 6038, had Section 2461A ever been used to collect taxes? Had Section 2461A been used to collect taxes? Yeah. I'm not aware if it had or not. I'm sorry. You said Congress ratified the IRS's view, right? In reenacting Section 6038B, yes. One of the things we think buttresses are arguing is that Congress ratified the IRS's view of the accessibility of the penalty. And how do we know that Congress was aware of the IRS's view? The Mookie court did reference a joint committee report that referenced the accessibility. Now, the Mookie court did not think that that was enough in order to The joint committee being the Joint Committee on Taxation? Correct. That's the only one I'm aware of where there's a reference to Congress potentially being aware of the IRS's practice. So that was in 1998, I believe, and it was reenacted in 2017. But we think it's not just the ratification argument. I mean, the ratification argument, we really think buttresses the broader concerns that the D.C. Circuit raised about why the penalty under Section 6038B was enacted. Congress noted that the Section 6038C penalty was not being implemented very much, and they wanted a more streamlined application of the penalty. And as the D.C. Circuit said, it doesn't make a whole lot of sense for Congress to enact a more streamlined penalty that it wanted to be imposed more often, but then throw sand in the gears by requiring a referral to the Department of Justice. And the D.C. Circuit also raised the coordination issues between Section B and Section C, and we think that those are persuasive as well. If you step back, the Subsection C penalty is a penalty that operates as an increase in tax, so it's already assessable, and it was already assessable. And Congress implemented the Section 6038B penalty and coordinated it with an already assessable penalty. So we think that coordination helps buttress the argument that there was an implied grant of authority that the penalty was assessable. So as I understand it, Mr. Willey, these are really the points you're raising are in one sense unrelated to the textual analysis, but they are reasons why, when we look at the purpose that Congress had in mind by reference to the legislative history and by reference to the context and the really almost rational review of these provisions, so B and C, I think what you're saying is that it would be almost irrational, certainly highly inefficient, given Congress's concerns expressed by the legislative history, to require the Secretary in one case, B, to go to court, to federal court, and another case, to permit under C, to the Secretary to pursue without going to court a penalty for reducing, in the form of reducing the credit. Is that correct? Well, that is correct. There's one thing to correct there, which is that you do have to go to tax court to collect the C penalty, because it's subject to... Tax court, not federal district court. Yeah, yeah. I'm sorry. You're right. I should have made that distinction clearer. When I say court, with great respect to tax court, I mean federal article III court, as opposed to tax court. Right. What the D.C. Circuit recognized is that these starkly different tracks, the tax court and the federal district court, don't make a whole lot of sense when you look at the reason why the 6038B penalty was implemented. Let me ask you a question. How long has this been, that is, this position with respect to 6038B, been the position of the government, that under B, it's accessible? How long has that been the position of the federal government? The practice, as far as I'm aware, has gone back to the enactment of 1982.  Yeah. Okay. Correct. Well, so the practice, and I take it from that answer and the position, has been that these have been accessible. And so when was the first time that the accessibility of the penalty described in 6038B, when was the first time that that was contested or challenged? I believe it's just been recently. I'm not aware. Why? Why, in your view? I don't know. I know the taxpayer advocate has raised this issue recently. It's put it in its reports, so I think that may have alerted some attorneys to the issue. Who is the taxpayer advocate? I'm sorry? Who is the taxpayer advocate? The taxpayer advocate is an office within the IRS that advocates for taxpayers. They have raised the issue of this potential accessibility. When was that raised? Is that in the records somewhere? No. I don't believe that's. When was that raised? Recently, within the last five. I don't know the exact date, but within the last five to ten years, I believe, it's been in the reports. These cases have only arisen even more recently. Is that correct? I believe that's correct. Unless there's any further questions. Am I right that, just to pick up on Judge Kibanis' question, very helpful, so there have been, since 1982, a number of amendments, seven or so amendments? Correct. And in each one of those cases, understanding that you're largely relying on the joint committee report, but as you pointed out earlier in answer to one of my questions, it's been very clear since 1982 that the government, the IRS, has sought to assess this penalty under 6038B. Is that right? Yes. The government has been assessing this penalty since the beginning. And as the, as you pointed out, one, is it Mookie 2, Mookie 1? I've lost track of the Mookies. Mookie 2 is the more detailed opinion. Okay. But Mookie 2 acknowledges it, says it's just a passing reference, it's not going to affect our view. But as I understand it, what the joint committee said was that the IRS, that section, that the IRS automatically assesses penalties through the application of its automated matching system under section 6038B.1.  That's what you're relying on. That was the reference that I, yeah, that I was talking about with Judge Kibanis earlier. That's correct. Judge Kibanis, any questions? No, thank you very much. Appreciate it. Thank you. Thank you. And you've reserved two minutes for rebuttal. Yes. May it please the Court. Parker Rider-Long. We have Skadden Arps for Petitioner Apolli Joseph Safdie. I want to start with some of the issues that were raised already, and then I'll want to go to the coordination and reasonable cause issues that were the centerpiece of the D.C. Circus decision. So just to start out with the 6201 point, I'll make this very brief. I think the government's argument cashes out to basically saying that the commissioner has power to assess non-assessable taxes. And so it just doesn't make sense. It's an opposite position. So we go to the question of ratification. No matter what the language. Okay. So 6038 is really that. I think we're talking about 6038, Judge Lohier. And to go to Judge Cabran is this question about ratification, and you had some as well. You actually look at the Mookie II decision, and it's a decision that 16 judges of the tax court are all looking at and joining together, responding to the D.C. Circus decision. And what they're pointing out is that although 6038 was amended seven times, there's nothing in the legislative history of those amendments that shows any awareness of this practice with respect to the penalties. That's at 163 T.C. But in 2013, as you point out, we just had this colloquy. They specifically refer to assessment under 6038B. And I don't understand them to be at that time acting on Section 6038. So I don't know that you can get there from ratification anyway. I think there are two other important points about ratification. One is that normally when you look at a ratification argument, you would expect case law or regulations or formal policy statements, nothing like that here. And the other point is we're talking about legislative history, and we're so far away from the path of normal. I agree. But I think that just the commissioner was, the counsel, Mr. Willey, commissioner, was just saying that that is prerogative of the plain text. So if you want to address the text now, that would be great. On the text. So I don't think there is anything in the text of Section 6038 that shows that the 6038B penalties are assessable. And the Mookie II court said there's no text that approaches the assessment text in other penalty statutes. And they go through the different ways. This is in the Farhi I decision, the Mookie II decision. We've counted from those decisions 47 different statutes where the tax code makes plain and clear that a penalty is assessable. Sometimes it says it shall be assessed. Sometimes it says it shall be treated like a tax. In fact, the decision, district court decision in Huang that Mr. Willey referred to, it was unnecessary for the district court to go as far as it did because the penalty in 6039FC1B said that the penalty shall be treated in the same manner as a tax there. So we're talking about there's no language in 6038B that at all suggests that the penalty there will be assessable. So what the D.C. Circuit did instead was it looked at the purpose that it divined from the legislative history. And I think the purpose of the — Can I step back or ask you to step back for a second and tell us about 6038D, capital D, and the penalties under 6038B which, as I understand it, you acknowledge are assessable. Is that right? I think that the language in 60 — Is it right that you acknowledge that — I would acknowledge they're assessable because it necessarily presupposes assessment authority when it's talking about how those penalties will be assessed. I think that is a sufficient indication to say that those penalties are assessable. Even though it doesn't explicitly authorize. Well, I — we're not making — Judge Lohe, we're not making a magic words argument here. I'm going to actually point you to section — our statute, 6038 subsection C, and Mr. Willey, as he explained, those are assessable after deficiency procedures. You actually have to go in a little bit of a path in the tax code to understand why those penalties are assessable under deficiency procedures. So there's not a magic words requirement. To give you that path, because it actually goes into the coordination point that I want to talk with the court about, the foreign tax credit reduction and what is now — Before you get to coordination, because that is also — that follows text, right? So coordination is a textual analysis. But on the text, we look at other provisions. 6038 capital D seems to be virtually word for word the same. So tell me what the important distinction is that I need to look at to determine that it's materially different from 60 — from the statute of issue in this case. 6038 D, Your Honor, refers — it presupposes assessment authority because it uses the word assessing. And it says here that — Here meaning where? For — it says in — and this is D1 — excuse me, E2, for purposes of assessing the penalties imposed under this section. So there's an express reference to assessment that presupposes there will be assessment of those penalties under the section. And as the tax court explained in Mookie 2, there's nothing at all that you can find in 6038 B or 6038 that says that the 6038 B penalty will be assessable. So I agree, Judge Lohe, you have to look at the tax code as a reticulated scheme. You have to read the provisions together. That's the type of argument we're making. And the point I was actually making about the 6038 subsection C penalty, which was the original foreign tax credit reduction penalty that's still there that has to be coordinated, the reason that provision is assessable, although, if so, usually after deficiency, is because it reduces the tax by — excuse me, increases the tax by reducing the credit. And if you increase the tax, you have — and the taxpayer hasn't paid it, you have a deficiency of tax in the ordinary sense of the term in 6201. So you go into deficiency proceedings under 6211, and the deficiency proceedings are governed by 6211 through 6215. And on the coordination point, which I agree is not a textual point, but the way I read the D.C. Circuit's opinion is that they're looking and saying we are divining a purpose from legislative history that the 6038 B penalty be streamlined, easy to administer, applied in most cases. And I don't think you can just go look at the legislative history and decide that that is the policy that should be applied because that's not the text of the statute. But even assuming you think that's right — so that's error number one. Even assuming you think that's right, what we know from the tax court's decision in Mookie 2, the inferences on inferences that the D.C. Circuit piles don't actually get you to the place of saying this is a better coordinated system, if you agree with the IRS. And why is that? I think we can start with the deficiency procedures themselves. And what the tax court points out — this is a Mookie 2 decision, 163 tax court at 165. And they're going through the different procedural requirements of deficiency. And they say given the various procedural requirements that the Section 6038C penalty is subject to, it does not necessarily follow that a referral to the Department of Justice to file a lawsuit in district court is more complicated. You end up with full-blown judicial proceedings and deficiency proceedings where any number of issues can come up until you — until the tax court makes a determination of what the assessment should be. And only after that time — this is required by 6213A — can the commissioner then assess the tax. So what about the subsection B penalties? What the D.C. Circuit says is, oh, those will be assessed by the commissioner. Then they'll be subject to collection due process procedures where the taxpayer can talk about whether the penalty should have been assessed with the commissioner. First problem. Collection due process comes in in 1998. Section 6038B comes in in 1982. There is no way that for that 16-year period of time the statute could have operated the way that the D.C. Circuit understands it and the commissioner understands it. Second point — this raises a serious concern — is that these are two different procedures. So collection due process procedures would have to start a new case on a petition by the taxpayer. And there are serious questions that the Mookie court goes through. So this is at pages 167 through 170 of the opinion, talking about how in many cases, although perhaps not in Mookie and Farhi themselves, there won't be able to be review of that liability determination for that penalty because there was a prior opportunity for that issue to have been addressed with the IRS and the underlying collection due process procedures. That's section 6330C2B. So they say, we don't know what to do with this if we end up with these cases that are coordinated. Whereas the D.C. Circuit said, oh, it's easy. You'll just coordinate the — or the IRS now says, you'll just coordinate the cases. It's easy. Another complication. Let's say the taxpayer decides to pay the B penalty. And there's still — they still have the issue with the C penalty because whatever the foreign tax credit is going to be, you have to reduce it by the same amount, they pay it. And they say, I'm going to file a refund action in Federal District Court, the same court we don't want to — the IRS says they don't want to have to go to. We file a refund action under 7422A in Federal District Court. Now you have the very parallel proceedings that the IRS and D.C. Circuit are telling us can't possibly be the goal. But at the front end, there's an efficiency. That — what you're describing is a decision by the taxpayer to seek a refund that may create an inefficiency. But at the front end of this process, consistent with possible reading, certainly the commissioner's reading of the history, and consistent with, you know, efficiency principles, you go to one court. You go to tax court. And that's it. I think the problem, Judge Lohe, is in — Maybe I've misunderstood your argument. But I think that the refund, sure, there may be examples and instances where the coordination doesn't quite work out. But the — it's — the strong policy favors dealing with one venue as opposed to two at the front end. Well, Judge Lohe, I think a few points, because I think a few points are important to understand here. Section 6038C penalty, if you're looking at legislative history, Congress says this is generally not imposed. That's what it says in legislative history. Now 16 judges of the tax court tell us this is still not imposed. We're finding one case where there's a — where the subsection C penalty imposed. So we're going to say we should interpret the whole statute purposefully based on a coordination concern that is rarely going to arise because you have to have subsection C penalties imposed to have coordination in the first place. I don't think anyone's going to dispute that it is very efficient for the tax collector to just impose and assess these penalties and go after it. But if we look at what Congress is expressing in its intent through the text, you don't get there. And if we want to think about why might Congress have wanted to do it the way that we're advocating, well, one reason is you don't have collection due process procedures in place at the time. Don't we want to give taxpayers a chance to say, you know what, this is a very harsh penalty. I made a mistake for a week. I have reasonable cause for not having done this. We want to have some form of due process. Let's make — Let me ask you — and I hear the argument. Is it Ryder law made? That's right, Your Honor. Mr. Ryder law made. So there are also a number of other penalties in the code that have been regarded as assessable, but which don't explicitly confer assessment authority. So you have — I've got in front of me 6039 capital F, 6039 capital G. And in answer to my earlier question about the other provision, you pointed out that it uses the word assess. I appreciate that. But neither one of those, if there are others, 6038C, 6038B, I think, have that word. And yet they are viewed as — the penalties imposed under those provisions are viewed as assessable penalties. What are we to make of that? Sorry, Your Honor. I actually referred to the 6039F penalty, which is at issue in the Huang case. There is express language that tells you to treat it like a penalty. Where is that? The express language is that it says that it shall be treated in the — it shall be collected or paid in the same manner as a tax, in the same manner as a tax. In Farhi and — I'm sorry. What part of that? This is subsection C1B. 1B. Okay. So upon notice and demand by the Secretary and in the same manner as tax. And once it puts you into tax, you know from 6201 you've satisfied that exception to the 2461A rule. And so what Farhi — Farhi won in, I believe, his 160 tax court of 405 to 406. You can see that it's one place that the tax court goes and catalogs these different provisions. It does it as well in Mookie. We do it in the briefs. There are these different ways that Congress has made clear that — So assessed — it can say assessed in some other part of the applicable provision, or it can say, as you're arguing, it can make a reference to in the same manner as tax. That's right, Your Honor. And there are also other provisions that we point out in the brief where it's simply a cross-reference. So they can cross-reference the provisions governing Chapter 68, or they can say it would be collected in the same way as another penalty. So these are all ways, in your view, or you're asking us to embrace the view, that Congress can otherwise explicitly confer assessment authority by reference to — just by saying it in the same manner as tax? I think they can, Your Honor, because that's what 6201 is doing. It's giving the Commissioner power to assess all taxes. And taxes doesn't ordinarily include penalties. It brings in assessable penalties. So one way you know you can come within is if Congress tags a penalty as assessable. It's done that on a number of occasions. And those exact words — 6039, capital G. I don't have that one in front of me, but I think that — I would venture to guess, if you looked at all of these where the tax court or another court said it's assessable, there's going to be one of those different forms of language. The tax court — the 16 judges of the tax court went through and found all these provisions, and they essentially broke them down into — you have some where it says it's going to be assessed and collected as a tax, others where it says it's going to be paid in the same manner as a tax, treated in the same manner as a tax, or it refers to another provision of the code and says you're going to treat it the same way as another penalty, which has one of these other — you know, is qualifying language. So I think where we are — and you can certainly ask Mr. Alito this question — I don't think there is a penalty that's understood as assessable without some form of textual hook. And that includes the subsection C penalty in 6038, which gets there because when you're changing the — when you're reducing the amount of credit, you're changing the amount of tax. And when you're changing the amount of tax, tax is assessable under 6201. And this is all, I think, consistent with what this Court has recognized, Supreme Court has recognized, I think the Commissioner's argument. The tax code is articulated. We expect Congress knows what it's doing. I think this Court has even said with mathematical precision. So these are shorthand ways that Congress can get there. But there's no way that Congress has gotten to this place with 6038B and said it's assessable. I think the — I see my time's up. So I will just say I think reading Mookie II is very important because that decision, 16 judges of the tax court go through and look at all the rationales that the D.C. Circuit gave. I'll call them pragmatic rationales based on purposivism, concerns about coordination, concerns about the reasonable cause determination, and say this isn't how it works. We know because we see these cases day in and day out. You know, Mr. Ryder, lawmaid, I was — I once dissented in a matter where I pointed out that I think it was 23 federal judges around the country, including Justice Souter, sitting by designation, had ruled in the way that I thought was appropriate. And the operative word there that I started with is I dissented. So — but I appreciate that the tax court, you know, has real and legitimate expertise in this area. And I think that that's the point. Can I ask counsel a quick question? His time, I know, is up, but it's a very simple question of history. When was Section 6038B enacted? 1982. What, 1982? 1982. And then Section 2461? 1948. So at the time that 630 — 6038 was enacted, between — what was the first date? 1982, for this penalty. Yeah. Had Section 2461A ever been used to collect taxes? I am not aware of a citation for that proposition. We have pointed in the brief also to Section 7401, which contemplates the use of civil actions by the commissioner working with the Department of Justice to bring those actions. And we know — and I'd add this in terms of history, because I know, you know, a page of history is worth a volume of logic and all that. Maybe with deference to the presiding judge, perhaps you could just let us know by letter what we know about that period of time in question and the use of 2461A to collect taxes. Just a bit of history. Nothing argumentative or complicated. Yeah, I would ask you to do that. I think that's a wonderful idea. And the IRS commissioner, counsel for the IRS commissioner, can also do the same thing, submit a letter simultaneously in three weeks, say. Is that — it is the holiday season. I don't want to — but in three weeks from now. Okay. Okay. Is there anything further? So, rebuttal? Go ahead. Thank you. I'll just be brief. My friend on the other side talked about the Mookie court's discussion of how, well, you know, in 638B, there's no text approaching explicitly granting assessment authority. There's no text approaching explicitly equating it with penalties. But the problem is, as Your Honor pointed out, Section 6038CapD also doesn't have that type of language. And Section 45 as well is another one of those types of penalties that doesn't have any of that type of language, yet those are still — So, to be fair to your friend on the other side, he then pointed out that there is some language about — that refers to the use of the word assessed. Is that right? That is correct. Section 45 says deficiency procedures shall not apply to the assessment or collection of the penalty. But, however, that phrase is in itself a grant of assessment authority. I mean, elsewhere they've been saying, well, you need this explicit grant of assessment authority. Then when it comes to that phrase, which doesn't — is not any type of grant of authority, they say that, well, that oblique reference to assessment can, in fact, turn on the assessment authority. Well, we would say that there's just not that much daylight between doing that and then looking to the purpose, the structure, the history of Section 6038B and concluding using those tools that, in fact, Congress turned on accessibility for that in the same way that it turned on accessibility in Section 45 and Section 6038 Cap D. But I think that the point is that we're looking to see whether a particular statute or statutory section has conferred assessment authority, and it may not be in the particular penalty provision. So, for example, it's in D of 6038 Cap D. Sorry, confusing D and D, but you got it. But the — another — the following section, Section E of Cap D, specifically talks about for purposes of assessing the penalties imposed under this section, which then makes it very clear. I think that that's the argument. Now, granted, there may be other sections within the Code that — one of which I mentioned — that don't reference either a tax or don't have this language in another subsection of assessing the penalties imposed, and I hear that. But with respect to Cap D, that's the response. And your response is, well, that just really supports your argument that Congress — what is the response? Well, the response is that they're basically requiring assessment as a magic word in the statute instead of looking overall to can we find through the statute's — Well, interestingly, neither of you are relying on magic words, but — It would be nice to have some magic words. It would be nice to have some magic words, yes. I mean, all I'll say is I think they're trying to draw a clear line with the word assessment, and we don't think that that is justified, is the way I'd explain it. And my understanding is also that you, the Commissioner, are arguing that you never need an explicit reference to assessment. Or it's tax, which I'm not focused on. The word tax doesn't need to show up in a particular way in the section in order to determine that Congress meant by that section to allow for an assessment, to confer assessment authority. Is that correct? We don't think there's any specific language required. But, I mean, with respect to taxes, Section 6201 does explicitly make clear that all taxes are assessable. And you heard my colloquy with your friend on the other side. Are there other sections that you're aware of where either by virtue of a concession from your friend or by virtue of case law, where we've said or where it's clear that there is assessment authority conferred, but none of the assessment doesn't show up as a word? The issues related to the language in 6039, what is it, F, in the same manner as tax doesn't show up, but it's clear that there is assessment authority? I'm not aware of any other penalties other than the ones that we've discussed today. Because there's some literature out there that suggests that if we were to agree with Mr. Saftier, his interpretation, that might have a significant impact on other provisions. Are you aware of that? Yes. I mean, I think it would have an impact on certain of the penalties, for example, outside of Chapter 68. What are those provisions? Off the top of my head, I'm not aware of any of the ones other than what we've discussed today. I guess the other ones are the ones that are cross-referenced, that cross-reference 45. For example, 179D is one that cross-references 45, but that one just has a cross-reference to the section. So the textual analysis would be the same between those. Is there anything further? I have nothing further. All right. Thank you so much. Thank you both. Thank you, Your Honors.